COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Alston, Huff and Chafin
Argued at Alexandria, Virginia


NATALIA V. LOEWINGER

                                                              OPINION BY
v.        Record No. 2383-13-4                        JUDGE GLEN A. HUFF
                                                          OCTOBER 21, 2014

ESTATE OF STEPHEN JAY LOEWINGER


                    FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                              Burke F. McCahill, Judge

              Patrick G. Merkle (Law Offices of Patrick G. Merkle, PLLC, on
              brief), for appellant.

              Vernon W. Johnson, III (Nixon Peabody LLP, on brief), for
              appellee.


        Natalia V. Loewinger ("appellant") appeals an order of the Circuit Court of Loudoun

County ("trial court") directing Stephen J. Loewinger ("Loewinger") to pay appellant a lump

sum amount of $59,805.67 pursuant to the parties' premarital agreement.  Appellant presents the

following assignments of error on appeal:

        1.  The [trial c]ourt erred in its interpretation of the parties'
            premarital agreement in the way the [trial c]ourt calculated the
            marital share of the proceeds of the Bethesda, Maryland
            property upon its sale in 2004 to determine [appellant's]
            interest therein.

        2.  The [trial c]ourt erred in its interpretation of the parties'
            premarital agreement by excluding from [appellant's] lump
            sum award her share of the marital portion of the equity in the
            Bethesda, Maryland property, which had been retained by
            [Loewinger] following the sale of that property in 2004.

        For the following reasons, this Court holds that appellant's action against the Estate of

Stephen J. Loewinger ("appellee") in the present case is a nullity.  Accordingly, the appeal is

dismissed.

## I. BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). So viewed, the evidence is as follows.

On December 2, 1999, the parties executed a premarital agreement ("the agreement") prior to, and in consideration of, their marriage on December 18, 1999. At the time of their marriage, Loewinger owned a house in Bethesda, Maryland ("the Bethesda house") that became the parties' marital residence after the wedding. The agreement states that

> The parties agree that [Loewinger] shall retain a separate interest in [the Bethesda house] in an amount equal to the net asset value of the property as of the date of the marriage as shown on Exhibit A. The parties further agree that any appreciation beyond the value as shown on Exhibit A shall be treated as marital property [("marital equity")] to be shared equally by the parties in the event their marriage should subsequently dissolved [sic] by Decree of Divorce.

Elsewhere, the agreement states that "all property now owned by either party shall remain and be his/her separate property . . . . The property currently owned by each party is set forth on Exhibits A and B, which by reference are made a part hereof." Exhibit A, which details Loewinger's separate property at the time the agreement was executed, lists multiple retirement and money market accounts, including an account Loewinger referred to as his premarital "money market account."

In 1999, when the parties entered into the agreement, the Bethesda house was valued at $500,000 with a mortgage debt of $265,000. The parties sold the Bethesda house in 2004, however, for $810,000. When the house was sold, it had an outstanding mortgage debt of $311,898.55. This increased mortgage debt led the trial court to conclude, by "inference," that the Bethesda house had been refinanced even though there was not "any direct evidence" of this.

- 2 -

After satisfying the outstanding mortgage and closing costs from the sale of the Bethesda house, the parties netted $458,289.20, the entirety of which was deposited into Loewinger's money market account.

In August 2011, eight years after the sale of the Bethesda house, Loewinger left the marital home and instituted divorce proceedings against appellant. At the time of the parties' trial for divorce and distribution of marital property on August 29, 2012, the money market account had a balance of $811. The trial court found that after depositing the proceeds from the sale of the Bethesda house in the money market account, Loewinger had used the money to make a substantial down payment on a house in Leesburg, Virginia, buy a $38,000 Lexus for appellant, redecorate their house, install a deck, and go on family vacations.

In the decree of divorce, the trial court awarded appellant $59,805.67 as a lump sum award under the agreement. The trial court also noted, however, that "there is no money left from [the sale of the] Bethesda [house]. Had there been, [appellant] would have . . . received a more significant sum."

On October 6, 2013, more than one year after the entry of the divorce decree, Loewinger passed away, causing the trial court to enter a final order dismissing the case on November 20, 2013.[1] Appellant subsequently noted her appeal to this Court on December 12, 2013, but thereafter obtained leave for the trial court to substitute Stephen Loewinger's estate as the party in interest.[2]

---

[1] At the time of appellee's death, the parties were still litigating issues regarding custody and visitation of their minor child.

[2] After noting her appeal, appellant filed with this Court a "Motion for Substitution of Appellee or, In the Alternative, for a Stay of Appeal to Permit Entry of Order of Substitution by the Circuit Court." Upon consideration of this motion, this Court granted "leave" for "the trial court to consider the appellant['s] motion for substitution." The trial court then granted appellant's motion to substitute Stephen Loewinger's estate as the party in interest.

## II.  ANALYSIS

On appeal, appellant contends the trial court erred in its interpretation of the premarital agreement.  Specifically, appellant argues that the trial court erred (1) in "its interpretation of the parties' premarital agreement . . . [when] calculat[ing] the marital share of the proceeds from the sale of the Bethesda [house]," and (2) by "excluding from [appellant's] lump sum award her share of the marital portion of the equity in the Bethesda [house] . . . ."

As an initial matter, however, appellee responds by arguing that the current appeal is a nullity and must be dismissed because appellee is not a proper party to the case.  We agree.

It is well established in Virginia that "[a]ll suits and actions must be prosecuted by and against living parties, in either an individual or representative capacity."  Rennolds v. Williams, 147 Va. 196, 198, 136 S.E. 597, 597 (1927).  This is so because "[t]here must be such parties to the record as can be affected by the judgment and from whom obedience can be compelled."  Id. at 198-99, 136 S.E. at 597.  This principle applies "to writs of error, which are in the nature of new actions, as well as to an original action."  Id. at 199, 136 S.E. at 597; see also Martin P. Burks, Common Law and Statutory Pleading and Practice § 423 (4th ed. 1952) ("appellate proceedings must be between living persons, either in a personal or representative capacity . . . and if the defendant-in-error dies after the judgment appealed from, but before the writ of error is applied for, the writ of error will be dismissed as it should have been applied for against the personal representative of the deceased").

Accordingly, Code § 8.01-229(B)(1) and (B)(2) "direct [a] decedent's *personal representative* to file any personal action which the decedent may have been entitled to bring and to defend any personal action which could be brought against the decedent."  Swann v. Marks, 252 Va. 181, 184, 476 S.E.2d 170, 171 (1996) (emphasis added).  This limitation is further highlighted by the language of Code § 8.01-229(B) "which allows *claims* to be filed against the

- 4 -

property of the estate, but provides that *actions* may only be filed against the decedent's personal representative." Id. (citing Code § 8.01-229(B)(2) and (B)(4)).

In the present case, appellant is not asserting a "claim . . . against the property of [Loewinger's] estate," id., but rather, she is asserting an action against Loewinger personally based upon the terms of their premarital agreement. See Code § 8.01-2 (defining "[a]ction," for the purposes of Title 8, as a term that "may be used interchangeably [with 'suit'] and shall include all civil proceedings whether upon claims at law, in equity, or statutory in nature and whether in circuit courts or district courts"). In other words, appellant is asserting a contract action against Loewinger personally. See Smith v. Smith, 43 Va. App. 279, 286-87, 597 S.E.2d 250, 254 (2004) (premarital agreements "should be interpreted and enforced no differently than any other type of contract").

As such, appellant was required under Code § 8.01-229(B)(2) to name Loewinger's personal representative, not his estate, as the party in interest in the present case. Appellant's failure to do so nullifies her appeal, and, therefore, the appeal must be dismissed. See Rennolds, 147 Va. at 200-01, 136 S.E. at 598.[3]

---

[3] Code § 8.01-20 provides that

> [i]f at any time after verdict or judgment in the trial court during the pendency of an appeal or before the appeal is granted . . . [there is a] death of a party . . . the Court of Appeals or Supreme Court . . . may, in its discretion, take or retain jurisdiction and enter judgment or decree in the case as if such event had not occurred.

This provision, however, "has no application where the death occurs *before* the appeal or writ of error is awarded." Rennolds, 147 Va. at 199, 136 S.E. at 597-98 (emphasis added); see also Poff v. Poff, 128 Va. 62, 72, 104 S.E. 719, 722 (1920) ("Where [the death of a party] occurs before the appeal is allowed . . . the suit or action abates as to the deceased party . . . . But where an appeal is allowed . . . before such death, the case is from that moment a case pending in the appellate court, and under the statute . . . there is no abatement in the appellate court because of death." (citing Reid v. Strider, 48 Va. (7 Gratt.) 76 (1850))).

## III.  CONCLUSION

For the foregoing reasons, this Court holds that appellant's action against appellee in the present case is a nullity.  Accordingly, the appeal is dismissed.

<u>Dismissed.</u>